UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SIDNEY E. PURDIE,

                               Plaintiff,

    vs.                                                  9:09-CV-951
                                                         (FJS/ATB)
HAROLD D. GRAHAM, *et al*,

                               Defendants.
_____

SIDNEY E. PURDIE, Plaintiff *pro se*
MEGAN M. BROWN, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c).[1] Plaintiff alleges in his amended complaint that defendants denied him access to the courts while plaintiff was an inmate in the custody of the Department of Correctional Services ("DOCS") at Auburn Correctional Facility ("Auburn"). (Am. Compl. at 3) (Dkt. No. 7).

Presently before this court is defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).[2] (Dkt. No. 26). Plaintiff has filed two documents in opposition to

---

[1] The case was originally referred to the Honorable Gustave J. Di Bianco and was assigned to me upon Judge Di Bianco's retirement on January 4, 2010.

[2] Defendants filed a previous motion to dismiss only on behalf of defendant Graham because defendant Rice had not been named. (Dkt. No. 24). Defendants' current notice of motion includes both defendants and is identical in its arguments for dismissal. (Dkt. No. 26). Thus, the operative motion to dismiss in this action is Dkt. No. 26.

the defendants' motion.[3]  (Dkt. Nos. 28, 29).  For the following reasons, this court recommends granting defendants' motion and dismissing the complaint.

## I.     Facts and Contentions

Plaintiff alleges that he sent two letters dated April 27, 2009, to the New York State Court of Appeals.  (Compl. at 3, 10[4]).  On May 8, 2009, the Court of Appeals notified plaintiff that they had only received one of his letters dated April 27, 2009, and asked him to send another copy of the missing letter, a copy of the order and decision plaintiff was appealing, and the People's opposition papers to plaintiff's application for writ of error coram nobis he had originally filed with the Appellate Division.  *Id.*  On May 29, 2009, the Court of Appeals notified plaintiff that he had not complied with the May 8, 2009, letter.  *Id.* at 3, 11.  Apparently, plaintiff had sent another copy of the April 27, 2009, letter the Court of Appeals had already received, but had also failed to send a copy of the order and decision he was seeking to appeal along with the People's opposition papers.  *Id.*

Plaintiff filed a grievance dated June 1, 2009, with the Inmate Grievance Review Committee ("IGRC"), requesting a "full investigation" because the Court of Appeals had not received some legal documents sent by plaintiff.  (Compl. at 4, 16). On June 24, 2009, plaintiff received a response from the IGRC, stating that the

---

[3] The court notes that in plaintiff's papers, he often refers to himself as the "petitioner," but it does appear that he is responding to the motion to dismiss in this case.

[4] Plaintiff numbered the pages in his amended complaint (Dkt. No. 7), but failed to number the attachments.  Therefore, the court will refer to plaintiff's attachments by the CM/ECF page number.

grievance was going to be referred to the Superintendent without a decision from the IGRC. *Id.* at 48. The IGRC had determined that there were four receipts for legal postage advances that had been approved for plaintiff, but had been unable to obtain any additional information about the destination of the mail from J. T. Rice, the Senior Mail Clerk. *Id.* Thus, the grievance was being referred directly to the Superintendent. *Id.* at 48.

Plaintiff agreed with the IGRC's response and referral of his grievance to the Superintendent by checking a box on the grievance form. *Id.* The next day, however, the IGRC sent plaintiff another response, indicating that the Senior Mail Clerk had notified them that, in addition to the approval of the four legal postage advances, two pieces of mail were forwarded to their destinations on April 29, 2009, and two other pieces of mail were forwarded to their destinations on May 1, 2009. *Id.* at 49. *See also id.* at 18–21.

Plaintiff disagreed with this new response and appealed it to the Superintendent. *Id.* Defendant Graham, Superintendent of Auburn, did not personally review the appeal, but Assistant Superintendent, E.O. Meara, denied the appeal, upholding the determination of the "Correspondence Unit" and the IGRC, stating that "facility records indicate that the postage advances were processed and the legal mail sent." *Id.* at 23. On July 6, 2009, Plaintiff appealed the decision to the Central Office Review Committee ("CORC") because "legal documents did not reach the court." *Id.* On July 29, 2009, the CORC upheld the determination of the Superintendent, finding that they had "not been presented with sufficient evidence to substantiate any malfeasance by

staff." *Id.* at 22. On October 7, 2009, the State of New York Court of Appeals dismissed plaintiff's application, holding that the order plaintiff sought to appeal was not appealable under New York Crim. Proc. Law § 450.90(1). *Id.* at 47.

**II.   Motion to Dismiss**

Defendants move to dismiss the complaint, arguing that defendant Graham was not personally involved in the alleged constitutional deprivations, and that plaintiff has failed to state a claim based on denial of access to the court. (Dkt. No. 26). To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). In this case, plaintiff attached a significant number of documents to his amended complaint that this court has considered in making its recommendation.

### III.  Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or

custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, __ U.S. __, 129 S. Ct. 1937 (U.S. 2009).

Plaintiff has failed to establish personal involvement of defendant Graham. Defendant Graham is the Superintendent of Auburn and generally would not be involved in handling an individual inmate's mail. Plaintiff does not allege that defendant Graham was responsible for the mail problem. Defendant Graham also did not personally review plaintiff's grievance dealing with the legal mail issue. In addition, plaintiff alleges his mail was tampered with only once, so he has likewise failed to establish that defendant Graham failed to remedy any wrong that he would have had the opportunity to remedy. Finally, plaintiff has failed to establish that any policy or custom existed which caused the alleged mail problem or that defendant Graham was grossly negligent in managing any official that he supervised. Thus, this court must recommend dismissal as to defendant Graham for lack of personal involvement. In any event, as discussed below, plaintiff has failed to state a constitutional claim for denial of access to courts.

**IV.   Access to the Courts**

In order to establish a claim that a prisoner's right of access to the courts has been abrogated, actual injury must be shown. *See Lewis v. Casey*, 518 U.S. 343

(1996). The First and Fourteenth Amendments to the U.S. Constitution are implicated when a prisoner's mail is interfered with, but a plaintiff must allege that the defendants' actions hindered the prisoner's "efforts to pursue a legal claim." *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d. Cir. 1997).

Prior to the Supreme Court's decision in *Lewis*, the Second Circuit had held that "an isolated instance" of interference with an inmate's legal mail delivery was insufficient to state a First Amendment claim, either with respect to the mail itself or with respect to access to courts, where "the infraction was not in accordance with official policy or practice and where no showing had been made that the inmate's right to access to courts was chilled . . . ." *Washington v. James*, 782 F.2d 1134, 1139 (2d. Cir. 1986) (citation omitted). *Lewis* also requires that the actual harm must be to direct or collateral attacks on the inmate's conviction, or to a challenge to the conditions of confinement. 518 U.S. at 355. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

Here, plaintiff alleges that two pieces of legal mail, sent on the same day, failed to reach their destination. Because plaintiff only claims one incident of alleged tampering, even assuming the defendants[5] *did* somehow prevent plaintiff's legal mail

---

[5] Plaintiff has not identified the name of the John Doe defendant (Law Library Officer), but his or her identity would not change the court's analysis or its recommendation that the complaint be dismissed.

from reaching its destination, their alleged conduct would not rise to the level of a constitutional violation. Additionally, plaintiff has shown no actual harm as a result of the incident. Plaintiff maintained written correspondence with the Court of Appeals about the issue. *See* Compl. at 10, 11, 14, 29. More importantly, his application to the Court of Appeals was ultimately received and dismissed as unappealable, ***not*** because of any delay or failure to file the appropriate materials. (Compl. at 47). Plaintiff has therefore failed to state a claim based on denial of access to the courts. Accordingly, this court must recommend dismissal of plaintiff's complaint. Because an amended complaint could not overcome the deficiencies in plaintiff's access-to-courts claim, the dismissal should be with prejudice.

## VI. Qualified Immunity

Defendants argue that they are entitled to qualified immunity, which protects government officials when performing their discretionary functions when "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Defendants here did not violate a constitutional right, so the court need not address qualified immunity.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 26) be **GRANTED**, and that plaintiff's complaint be **DISMISSED IN ITS ENTIRETY, WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 14, 2010

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge